UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LASHAWN A., *et al.*,<br><br>      Plaintiffs,<br><br>      v.<br><br>MURIEL BOWSER, *et al.*,<br><br>      Defendants. | Civil Action No. 89-1754 (TFH) |

NOTICE TO CLASS MEMBERS OF
PROPOSED SETTLEMENT AGREEMENT

PLEASE READ THIS NOTICE CAREFULLY AND COMPLETELY. A SETTLEMENT HAS BEEN PROPOSED IN THE *LASHAWN A.* CASE THAT MAY AFFECT THE RIGHTS OF CERTAIN DISTRICT OF COLUMBIA RESIDENTS WHO WERE INVOLVED IN THE DISTRICT'S CHILD WELFARE SYSTEM.

Why did you get this notice?

1.  The purpose of this notice is to inform you about a proposed settlement in the *LaShawn A.* lawsuit. The settlement may affect the rights of certain people in the District who were in foster care or known to the District's child welfare system because of reported abuse or neglect. The settlement is not final. In order for the settlement to be final, the judge in this case, the Honorable Thomas F. Hogan, will hear from different people and decide if the settlement is fair, reasonable, and adequate. If this notice applies to you, you will have an opportunity to tell the judge what you think about the settlement before the judge decides whether to approve it.

    The rest of this notice explains the *LaShawn A.* lawsuit, how to determine whether this lawsuit applies to you, the key terms of the proposed settlement, and how you can give the judge your opinion about the proposed settlement.

Does this notice apply to you?

2.  This notice may apply to you if you are now or have ever been in foster care in the District or were known to the District's child welfare system because of

reported abuse or neglect.

**What is this lawsuit about?**

3. The *LaShawn A.* lawsuit was brought in 1989 by a group of people on behalf of a class of children who were in foster care or known to the District's child welfare system because of reported abuse or neglect. The people who brought the lawsuit, called the "named plaintiffs," were LaShawn A., by her next friend Evelyn Moore; Demerick B., by his next friend Dr. Owne Rennert; Gary C., by his next friends Crystal and Wesley Brown; Leo C., by his next friends Crystal and Wesley Brown; Robert D., by his next friend, Daryl Anette Chamblee; Kevin E., by his next friend Elizabeth Velez; and Tyrone F., by his next friends Eva Nash and Anatasia Holmes. They filed the lawsuit on their behalf and on behalf of all other persons like them ("plaintiffs").

4. The plaintiffs sued the District of Columbia officials responsible for the operation of the child-welfare and foster-care systems in the District. The people who were sued are called "defendants." Today, the defendants are the Mayor and the Child and Family Services Agency (CFSA).

5. The judge who was assigned to this case decided that the named plaintiffs and their lawyers would fairly represent all similarly situated persons, making this case a "class action." Because this is a class action, the people to whom this notice applies are also called "class members." After trial, the Court found the District liable for both constitutional and federal statutory violations.

6. From 1993 through the present, the parties agreed to various plans to support and govern the operation and performance of the District of Columbia's child welfare system, now led by CFSA. The judge approved those agreements, which are called "Consent Decrees" and have the force of law.

7. An expert was approved by the Court to ensure that the defendants did what they agreed to do. This expert, the Center for the Study of Social Policy (CSSP) is called the Court Monitor, makes regular reports to the judge about the defendants' progress in meeting their obligations, and has worked with the defendants to achieve the goals in the Consent Decrees.

8. In October 2019, the judge approved the most recent agreement between the parties, known as the Exit and Sustainability Plan (ESP). Of the 80 Exit Standards set forth in the 2010 Implementation and Exit Plan, the ESP placed 56 in the "Outcomes to be Maintained" section because the District demonstrated sustained performance and no future external monitoring was required.

9.   The remaining Exit Standards were placed in the "Outcomes to be Achieved" section, as the District continued to work towards compliance with all the Exit Standards. The ESP also outlined additional commitments the defendants were to make to exit from the lawsuit and federal court oversight.

10. The Court Monitor's most recent report, dated June 8, 2020, noted that the defendants had continued to make progress, meeting or partially meeting most of the remaining Exit Standards.

11. Given the progress that the defendants made on meeting more of the Exit Standards and the challenges to meeting the remaining Exit standards, the parties—aided by the Court Monitor—decided to discuss whether there was a way to resolve the remaining issues without more litigation.

12. The plaintiffs and the defendants have written down their agreement in a document called the "Settlement Agreement." Although, on August __, 2020, the judge preliminarily approved the agreement, the settlement is NOT FINAL. The settlement will be final only after the judge approves it after holding a public hearing called a "fairness hearing." Before the judge decides to approve it, you can tell the judge if you do not like any part of it and you can ask the judge to let you speak at the fairness hearing.

### What are the key terms in the Settlement Agreement?

13. The Settlement Agreement requires the defendants to take several steps designed to improve the child-welfare foster-care systems. The defendants have roughly two years to meet their obligations under the agreement. The key terms of the Agreement are:

   • CFSA will contract with a provider to develop a specialized psychiatric residential treatment facility (PRTF) for children and youth in foster care. The PRTF will meet nationally recognized standards and have a capacity to serve up to 8 children between the ages of 8 and 12.

   • By December 31, 2020, CFSA will authorize, recruit for and license enough foster care placements to have a 10% built-in surplus of foster care beds and will ensure that this surplus is maintained for the duration of the Settlement Agreement. As part of CFSA's efforts towards meeting this obligation, CFSA will hire a full-time staff person responsible for developing and carrying out a recruitment plan for foster care placements.

   • CFSA will ensure accessibility for clinical and therapeutic services for children and families by:
      · Maintaining a minimum of four in-house behavioral health therapists, a behavioral health clinical supervisor, and a psychiatric

nurse practitioner.
  - Maintaining a contract with a mental health provider to provide support and specialized therapeutic and crisis stabilization services to children in foster care aged five and over and their families. The contract will provide for the ability to serve 150 children and families each year.

- CFSA will maintain its ESP commitments toward self-regulation and public reporting, including:
  - Creating and updating policies;
  - Continuing to strengthen CFSA's continuous quality improvement processes, with quarterly and annual reports available on CFSA's website;
  - Continuing to complete and make public an annual Needs Assessment and Resource Development Plan, and report on Financial Support for Community-Based Services; and,
  - Continuing to conduct Quality Service Reviews (QSRs) for at least two years after exit from court jurisdiction, and at least once every two years thereafter.

- CFSA will maintain caseload standards as follows:
  - 90% of workers will have caseloads meeting these standards:
  - Social workers conducting investigations of reports of abuse and/or neglect shall not exceed 1:12 investigations.
  - Social workers providing services to children and families in which the child or children in the family are living in their home shall not exceed 1:15 families.
  - Social workers providing services to children in placement, including children in Emergency Care and children in any other form of CFSA physical custody, shall not exceed 1:15 children for children in foster care.
  - Staff having responsibility for conducting home studies shall not exceed 30 cases.

## Other Key Provisions

- The Court-appointed Monitor will assess CFSA's performance on the ESP requirements and the Commitments made in the Settlement Agreement for the period beginning January 1, 2020 and ending December 31, 2020 and provide the Parties and the Court with a complete draft containing all relevant information and data by March 1, 2021 and a final report by March 31, 2021.

- If the plaintiffs believe the defendants are not in compliance, the Parties will engage in mediation with the Court-appointed Monitor.

4

- If, 45 days after receiving a draft of the report and 15 days after receving the final report, the parties are unable to resolve compliance issues through mediation, Plaintiffs may raise their concerns to the Court which may result in further litigation. The fairness hearing and final settlement dates anticipated in this notification as well as in the Settlement Agreement are contingent upon Defendants' satisfaction of the Settlmeent Agreement terms and are subject to change. For the most up to date information regarding the time of the fairness hearing, please see www.cfsa.dc.gov.

- CFSA will prepare two public performance reports, one each for the first half and the second half of 2021.

- These reports will be validated by the Court-appointed monitor whose assessment will be included as part of CFSA's public performance report.

- Plaintiffs may at any time after the first report and within 6 months after CFSA's final public performance report, file an enforcement action alleging breach of the Settlement Agreement, but must first engage in mediation assisted by the Court-appointed monitor in an attempt to resolve their concerns.

- Unless an enforcement action is filed, the Settlement Agreement will expire 6 months after the filing of CFSA's final public performance report.

- The judge will retain jurisdiction over the case to decide any disputes about compliance with the Settlement Agreement.

- The Settlement Agreement contains more detail about each of these commitments and includes an enforcement provision.

14. You may obtain a copy of the entire Settlement Agreement on CFSA's website at www.cfsa.dc.gov.

15. Plaintiffs' lawyers believe that this Agreement is fair, reasonable, adequate, and is in the best interests of the class because it requires the defendants to continue to work to improve the child-welfare and foster-care system.

16. The lawyers for the plaintiff class are:  Marcia Robinson Lowry, Executive Director of A Better Childhood, and Arthur Spitzer, Legal Co-Director of the American Civil Liberties Union of D.C.. Class members do not pay any fees to these lawyers. If you have questions for the plaintiffs' lawyers, you can write to them at:

*LaShawn A.* Settlement

Attention: Marcia Robinson Lowry
A Better Childhood, Inc.
355 Lexington Avenue, Floor 16
New York, NY 10017

## <u>Now that you know the key terms of the Settlement Agreement, what can you do next?</u>

17. If you agree with the Settlement Agreement, you do not have to do anything.

18. If you disagree with any part of the Settlement Agreement and you want to tell the judge, you have to do these things:

  • You must write a letter to the judge telling him what you do not like about the Settlement Agreement. Include your name, address, phone number, and signature in the letter.

  • On the first page of your letter write in large or underlined letters: "Civil Action No. 1:89-cv-01754: Objections to Settlement Agreement in *LaShawn A. v. Bowser*."

  • Mail your letter to:
  The Honorable Thomas F. Hogan
  U.S. District Court for the District of Columbia
  E. Barrett Prettyman U.S. Courthouse
  333 Constitution Avenue, NW
  Washington, D.C. 20001

  • You must also mail copies of your letter to the lawyers for the plaintiffs and defendants at the following addresses:

| | |
|---|---|
| *LaShawn A.* Class Counsel | *LaShawn A.* Settlement |
| Attn: Marcia Robinson Lowry | Office of the Attorney General |
| A Better Childhood, Inc. | for the District of Columbia |
| 355 Lexington Avenue | Attn: Andrew Saindon |
| Floor 16 | Senior Assistant Attorney General |
| New York, NY 10017 | 400 6th Street, N.W., 10th Floor |
| Mlowry@abetterchildhood.org | Washington, D.C. 20001 |
| | andy.saindon@dc.gov |

  • If you need help writing your objections, you may ask someone to object on your behalf. The representative must state in the objection that he or she is your representative and explain the nature of the representation and the

name of the class member.

- If you have a guardian or you are under the age of 18, your parent, guardian or court- appointed representative may object on your behalf. The guardian must state in the objection that he or she is your representative, the details of the appointment by the probate court or relationship to you (if parent) and explain the nature of the representation and the name of the class member.

19. You must do all of this to be sure that the judge will read your letter. Your letter must be received on or before **May 1, 2021**[1].

20. DO NOT CALL THE COURT. THE COURT WILL NOT ACCEPT PHONE CALLS ABOUT THIS. YOU MUST SUBMIT YOUR OBJECTIONS IN WRITING.

**When and where will the judge decide whether to approve the Settlement Agreement?**

21. A final fairness hearing will be held on June 1, 2021,[2] at 10:00 a.m., unless it has been postponed for reasons relating to an earlier dispute,  before the Honorable Thomas F. Hogan of the U.S. District Court for the District of Columbia, at the E. Barrett Prettyman United States Courthouse. Please check with the Court to confirm the date of the hearing.  The courthouse is located at 333 Constitution Avenue, N.W., Washington, D.C. 20001. The hearing will be held in Courtroom 25A.

22. At the final fairness hearing, the judge will consider whether the settlement is fair, reasonable, and adequate. The judge will consider any objections that were made according to the procedures described above. Plaintiffs' and defendants' lawyers will be available to answer any questions that the judge may have.

23. You may speak at the hearing only if you sent your objections to the judge in writing.

24. If you would like to speak at the hearing, you must also request in writing the

---

[1] These dates are contingent upon Defendants meeting their obligation under the Settlement Agreement and Plaintiffs finding that no enforcement action is necessary during the evaluation period specified. For the most up to date information regarding the time of the fairness hearing, please see www.cfsa.dc.gov.

[2] See Footnote 1 above for information regarding how the date of the fairness hearing may change.

judge's permission to speak. To do this, send a letter to the judge and send copies to the lawyers for plaintiffs and defendants with the following on the first page in large or underlined letters: "Civil Action No. 1:89-cv-01754: *LaShawn A. v. Bowser*: Notice of Intention to Appear at Final Fairness Hearing." Include your name, address, phone number, and signature in the letter.

25. If the judge decides to approve the settlement, his decision is final and the lawsuit will end, except that the Court will still  be available to enforce the contract provisions for another 18 months if necessary. The defendants will undertake the commitments in the Settlement Agreement and class members will no longer be able to petition the courts for the same thing that they sued about in the *LaShawn A.* lawsuit.

26. If the judge does not approve the settlement, the ESP will continue in effect.